UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

VINCENT C. JOHNSON,                     :

                    Plaintiff,          :    12 Civ. 8265 (LAK)(HBP)

    -against-                           :    REPORT AND
                                             RECOMMENDATION
CITY OF NEW YORK,                       :

                    Defendant.          :

----------------------------------X


          PITMAN, United States Magistrate Judge:


          TO THE HONORABLE LEWIS A. KAPLAN, United States

District Judge,


I.   Introduction


          Vincent C. Johnson commenced this action pro se against

the City of New York ("City") pursuant to 42 U.S.C. § 1983,

alleging that the City was deliberately indifferent to an injury

he sustained immediately prior to his arrest (Complaint, dated

November 8, 2012 (Docket Item 2)).  By notice of motion dated

March 11, 2014 (Docket Item 35), the City moved for an Order

pursuant to Federal Rule of Civil Procedure 56 granting it

summary judgment and dismissing plaintiff's complaint in its

entirety.  For the reasons set forth below, I respectfully

recommend that the City's motion be granted.

II.  <u>Facts</u>

On September 21, 2012 at 1:00 A.M., plaintiff was riding his bike in Manhattan's Fort Tryon Park (Plaintiff's Deposition, annexed as Exhibit B to Memorandum of Law in Support of Plaintiff's Motion in Opposition to Summary Judgment, dated March 31, 2014 (Docket Item 40) ("Pl.'s Dep.") at 7).  Plaintiff noticed a police car on the road behind him, and he dismounted from his bike, picked it up and attempted to walk down a flight of steps adjacent to the road (Pl.'s Dep. at 11).  While walking down the steps, plaintiff fell, injuring his right foot (Pl.'s Dep. at 11-12).  After falling down the first flight of about eight steps, plaintiff attempted to stand up, but he was unable to bear weight on his right foot and fell down a second flight of about eight steps (Pl.'s Dep. at 12).

Plaintiff was lying on his stomach when Officer Mosca[1] descended the steps, searched plaintiff's pockets and backpack and found cocaine (Pl.'s Dep. at 12, 17; Plaintiff's Rule 56.1 Statement ("Pl.'s 56.1")[2] ¶¶ 5, 6).  Officer Mosca handcuffed

_____

[1]Plaintiff referred to Officer Mosca as "Officer A" in his deposition.

[2]Plaintiff's Rule 56.1 Statement was filed as part of his opposition brief (<u>see</u> Memorandum of Law in Support of Plaintiff's Motion in Opposition to Summary Judgment, dated March 31, 2014
(continued...)

plaintiff and asked him to stand up; plaintiff told Officer Mosca
that he was unable to stand and asked him to call an ambulance
(Pl.'s Dep. at 17).  Officer Mosca said he could not call an
ambulance from that location but instead needed plaintiff to
accompany him back up to the road (Pl.'s Dep. at 17).  Officer
Mosca helped plaintiff hop on his uninjured foot up the two
flights of steps to the road, "supporting [plaintiff] the entire
way" (Pl.'s Dep. at 18, 20).  Plaintiff told Officer Mosca that
"[e]verytime I jump it's hurting my foot" (Pl.'s Dep. at 18).
Officer Mosca then radioed for an ambulance (Pl.'s Dep. at 19).
Officer Mosca told plaintiff that to reach the ambulance, plain-
tiff would have to hop up another flight of steps to the main
roadway (Pl.'s Dep. at 20).  He then helped plaintiff up the
steps to the main roadway where two additional police cars and an
ambulance were waiting (Pl.'s Dep. at 22).  An officer in one of
the patrol cars, Officer Leung, told plaintiff that he was being
arrested for possession of a controlled substance and that he
would be taken to the precinct and put in an ambulance after his
paperwork was started (Pl.'s Dep. at 27).  The Criminal Complaint
indicates that Officer Leung arrested plaintiff at 1:50 A.M.

_____

[2](...continued)
(Docket Item 40) ("Pl.'s Mem.") at 3-6).  Because these documents
are not serially paginated, I use the page numbers assigned by
the Court's ECF system.

(Declaration of Rosemary Y. Nam, dated March 11, 2014 (Docket Item 38) ("Nam Decl.") Ex. C).   Plaintiff told Officer Leung that he was "in pain" and needed an ambulance (Pl.'s Dep. at 28).   Notwithstanding plaintiff's complaints of pain, the officers drove plaintiff to the 34th Precinct, a trip of less than five minutes (Pl.'s Dep. at 40).

        When they arrived at the Precinct, the officers asked plaintiff whether it would be easier for him to use the ramp or the stairs to enter the building; plaintiff chose the stairs, and the officers helped him hop up to the entrance (Pl.'s Dep. at 40).   Plaintiff noticed that his foot was visibly swollen by the time he arrived at the Precinct (Pl.'s Dep. at 28).[3]   He removed the laces from his sneaker on his injured foot and told one of the officers that he was "in pain" and that he thought his foot was broken (Pl.'s Dep. at 29).   After plaintiff was put in a holding cell, he told Officer Leung's partner, Officer Davi, that he needed an ambulance and showed him his swollen foot; Officer Davi responded "whoa," told plaintiff to "rest" and "sit back

---

        [3]The parties differ on whether plaintiff first saw his ankle was swollen in the patrol car or upon arrival at the precinct (see Pl.'s 56.1 ¶ 11 (in the patrol car); Memorandum of Law in Support of Defendant City's Motion for Summary Judgment, dated March 11, 2014 (Docket Item 39) ("D.'s Mem.") at 9 (upon arrival at the precinct)).   Because the trip to the precinct was short, the difference is immaterial.

down" and went to get Officer Leung (Pl.'s Dep. at 44).  Officer Leung also said "whoa" on seeing plaintiff's foot and told plaintiff they would call an ambulance for him after they started his paperwork (Pl.'s Dep. at 44).

After about two or three hours at the Precinct, Officer Leung and his partner drove plaintiff to Bellevue Hospital (Pl.'s Dep. at 51).  Bellevue's medical records indicate plaintiff arrived no later than 5:36 A.M., or at most four and one-half hours after the officers found plaintiff in the park (Nam Decl. Ex. D at 2).  Initially the officers parked at a distance from the entrance, but they moved closer to the entrance when plain- tiff requested that they do so (Pl.'s Dep. at 52).  Plaintiff was provided with a wheelchair at the hospital's entrance (Pl.'s Dep. at 52-53).  At 5:36 A.M., plaintiff was seen by a triage nurse (Nam Decl. Ex. D at 2).  At the hospital, an attendant gave plaintiff ice packs for his ankle and helped him onto a bed where he waited to be seen by a doctor (Pl.'s Dep. at 53-54).  After two hours of waiting, plaintiff screamed that he needed pain medication (Pl.'s Dep. at 55).  A physician subsequently reviewed an X-ray of the ankle and reported "no ankle swelling, possible small effusion.[4]  Linear lucency[5] at the medial aspect of the

---

[4]"Effusion" is "the escape of fluid into a part or tissue."
(continued...)

tibial plafond[6] is likely a vascular channel.[7]  No acute fracture
or dislocation.  No significant degenerative changes," and
prescribed ibuprofen and crutches (Pl.'s Dep. at 60; Pl.'s Mem.
Ex. C).

When plaintiff left the hospital, Officers Symon and
Nieves (who had replaced Officers Leung and Davi), refused to
permit plaintiff to use the crutches, saying it was "against
policy" (Pl.'s Dep. at 68).  Instead, the officers obtained a
hospital bed and rolled plaintiff out of the hospital on the bed
(Pl.'s Dep. at 69), helped him into the waiting police car and
drove him to Central Booking (Pl.'s Dep. at 70).  The officers
did not permit plaintiff to use his crutches on arriving at
Central Booking; instead, they parked close to the entrance, and
one officer helped plaintiff hop the thirty feet to the entrance
while the other officer carried plaintiff's crutches (Pl.'s Dep.

_____

[4](...continued)
Dorland's Illustrated Medical Dictionary, ("Dorland's") at 532
(27th ed. 1998).

[5]"Lucency" is an area of an X-ray that "appear[s] dark on
the exposed film."  See Dorland's at 1407.

[6]"Tibial plafond" is the "articular surface of the distal
end of" the "shin bone."  See Stedman's Medical Dictionary,
("Stedman's") at 1503, 1989 (28th ed. 2006).

[7]"Vascular channel" is a "furrow, gutter, or groovelike
passageway" that "contain[s] blood vessels."  See Stedman's at
354, 2092.

at 70).  Once inside, plaintiff was uncuffed and permitted to use his crutches (Pl.'s Dep. at 70).  Central Booking did not admit plaintiff, due to an issue with his paperwork, and he was returned to the Precinct, where he was again refused permission to use his crutches (Pl.'s Dep. at 78-79).  Later that day he was arraigned and released (Pl.'s Dep. at 80-81).

On September 25, 2012, plaintiff saw a doctor at New York Presbyterian Hospital, who plaintiff claims diagnosed his ankle injury as a hairline fracture and provided him with stronger pain medication (Pl.'s Dep. at 93; see Pl.'s Mem. Ex. C).

III.  Analysis

    A.  Legal
        Standard

        1.  Summary Judgment

The standards applicable to a motion for summary judgment are well-settled and require only brief review.

> Summary judgment may be granted only where there is no genuine issue as to any material fact and the moving party . . . is entitled to a judgment as a matter of law.  Fed.R.Civ.P. 56(c).  In ruling on a motion for summary judgment, a court must resolve all ambiguities and draw all factual inferences in favor of the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  To grant the motion, the court must determine that there is no genuine issue of material fact to be

tried.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23,
106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  A genuine
factual issue derives from the "evidence [being] such
that a reasonable jury could return a verdict for the
nonmoving party." <u>Anderson</u>, 477 U.S. at 248, 106 S.Ct.
2505.  The nonmoving party cannot defeat summary judg-
ment by "simply show[ing] that there is some metaphysi-
cal doubt as to the material facts," <u>Matsushita Elec.
Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586,
106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), or by a factual
argument based on "conjecture or surmise," <u>Bryant v.
Maffucci</u>, 923 F.2d 979, 982 (2d Cir. 1991).  The Su-
preme Court teaches that "all that is required [from a
nonmoving party] is that sufficient evidence supporting
the claimed factual dispute be shown to require a jury
or judge to resolve the parties' differing versions of
the truth at trial." <u>First Nat'l Bank of Ariz. v.
Cities Serv. Co.</u>, 391 U.S. 253, 288-89, 88 S.Ct. 1575,
20 L.Ed.2d 569 (1968); <u>see also</u> <u>Hunt v. Cromartie</u>, 526
U.S. 541, 552, 119 S.Ct. 1545, 143 L.Ed.2d 731 (1999).
It is a settled rule that "[c]redibility assessments,
choices between conflicting versions of the events, and
the weighing of evidence are matters for the jury, not
for the court on a motion for summary judgment."
<u>Fischl v. Armitage</u>, 128 F.3d 50, 55 (2d Cir. 1997).

<u>McClellan v. Smith</u>, 439 F.3d 137, 144 (2d Cir. 2006); <u>accord</u> <u>Hill
v. Curcione</u>, 657 F.3d 116, 124 (2d Cir. 2011); <u>Jeffreys v. City
of New York</u>, 426 F.3d 549, 553-54 (2d Cir. 2005); <u>Powell v. Nat'l
Bd. of Med. Exam'rs</u>, 364 F.3d 79, 84 (2d Cir. 2004).

"Material facts are those which 'might affect the out-
come of the suit under the governing law,' and a dispute is
'genuine' if 'the evidence is such that a reasonable jury could
return a verdict for the nonmoving party.'" <u>Coppola v. Bear
Stearns & Co.</u>, 499 F.3d 144, 148 (2d Cir. 2007), quoting <u>Anderson
v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>accord</u> <u>McCarthy</u>

v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007).
"'[I]n ruling on a motion for summary judgment, a judge must ask
himself not whether he thinks the evidence unmistakably favors
one side or the other but whether a fair-minded jury could return
a verdict for the [non-movant] on the evidence presented[.]'"
Cine SK8, Inc. v. Town of Henrietta, 507 F.3d 778, 788 (2d Cir.
2007) (second alteration in original), quoting Readco, Inc. v.
Marine Midland Bank, 81 F.3d 295, 298 (2d Cir. 1996).

Entry of summary judgment is appropriate "against a
party who fails to make a showing sufficient to establish the
existence of an element essential to that party's case, and on
which that party will bear the burden of proof at trial."
Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "In such a
situation, there can be 'no genuine issue as to any material
fact,' since a complete failure of proof concerning an essential
element of the nonmoving party's case necessarily renders all
other facts immaterial."  Celotex Corp. v. Catrett, supra, 477
U.S. at 322-23, citing Fed.R.Civ.P. 56.

2.    Deliberate
       Indifference

Under the Eighth and the Fourteenth Amendments, the
Government is obligated to provide medical care to inmates and

9

pretrial detainees, respectively.[8]  A police officer's
"'[d]eliberate indifference to [the] serious medical needs of [an
arrestee] constitutes the "unnecessary and wanton infliction of
pain" proscribed by the [Constitution].'"  <u>Washington v. City of
New York</u>, 10 Civ. 389 (LTS)(JLC), 2011 WL 566801 at *2 (S.D.N.Y.
Feb. 15, 2011) (Swain, D.J.), <u>quoting</u> <u>Estelle v. Gamble</u>, 429 U.S.
97, 104 (1976).

          Not every claim of inadequate medical treatment by an
arrestee rises to the level of a constitutional violation.
<u>Estelle v. Gamble</u>, <u>supra</u>, 429 U.S. at 105.  The failure to
provide medical care to an arrestee will give rise to a constitu-
tional violation only if two elements are established:

> The first requirement is objective:  "the alleged
> deprivation of adequate medical care must be 'suffi-
> ciently serious.'"  <u>Salahuddin v. Goord</u>, 467 F.3d 263,
> 279 (2d Cir. 2006) (quoting <u>Farmer v. Brennan</u>, 511 U.S.
> 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)).  The
> second requirement is subjective:  the charged offi-
> cials must be subjectively reckless in their denial of
> medical care. <u>Id</u>. at 280.  This means "that the
> charged official [must] act or fail to act while <u>actu-
> ally</u> <u>aware</u> of a substantial risk that serious inmate
> harm will result." <u>Id</u>. (emphasis added).  Officials
> need only be aware of the risk of harm, not intend
> harm. <u>Id</u>.  And awareness may be proven "from the very

---

          [8]Claims for deliberate indifference to medical needs are
judged by the same standards whether they are brought by
sentenced inmates, under the Eighth Amendment, or pretrial
detainees, under the Fourteenth Amendment.  <u>Nielsen v. Rabin</u>, 746
F.3d 58, 63 n.3 (2d Cir. 2014); <u>Caiozzo v. Koreman</u>, 581 F.3d 63,
72 (2d Cir. 2009).

fact that the risk was obvious." <u>Farmer</u>, 511 U.S. at 842, 114 S.Ct. 1970.

<u>Spavone v. N.Y. State Dep't of Corr. Servs.</u>, 719 F.3d 127, 138 (2d Cir. 2013); <u>accord</u> <u>Johnson v. Wright</u>, 412 F.3d 398, 403 (2d Cir. 2005).  A plaintiff must establish both the objective and subjective prongs of the deliberate indifference standard in order to prevail.  <u>See</u> <u>Hill v. Curcione</u>, 657 F.3d 116, 122 (2d Cir. 2011).

        A medical need is sufficiently serious if it is "a condition of urgency, one that may produce death, degeneration, or extreme pain." <u>Johnson v. Wright</u>, <u>supra</u>, 412 F.3d at 403 (internal quotation marks omitted).  "Factors to consider in determining the existence of a serious medical condition include 'the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; the existence of chronic and substantial pain,' or 'the absence of adverse medical effects or demonstrable physical injury.'" <u>Edmonds v. Cent. N.Y. Psychiatric Ctr.</u>, 10 Civ. 5810 (DAB)(KNF), 2011 WL 3809913 at *4 (S.D.N.Y. Aug. 25, 2011) (Batts, D.J.) (adopting Report & Recommendation) (internal footnote, citation and alterations omitted), <u>quoting</u> <u>Chance v. Armstrong</u>, 143 F.3d 698, 702 (2d Cir. 1998) <u>and</u>

11

Smith v. Carpenter, 316 F.3d 178, 187 (2d Cir. 2003).  "The
inquiry [with respect to the objective element of a deliberate
indifference claim] is 'fact-specific' and 'must be tailored to
the specific circumstances of each case.'"  Thomas v. Westchester
Cnty., 12 Civ. 6718 (CS), 2013 WL 3357171 at *4 (S.D.N.Y. July 3,
2013) (Seibel, D.J.), quoting Smith v. Carpenter, supra, 316 F.3d
at 185; see also Hudson v. McMillian, 503 U.S. 1, 8 (1992)
("[t]he objective component of [a deliberate indifference] claim
is . . . [necessarily] contextual" and fact-specific).

          Where, as here, the claim is that medical treatment has
been improperly delayed, the inquiry with respect to the objec-
tive element focuses on the sequelae of the delay rather than the
underlying condition itself.

> [W]here, as here, a[n arrestee] alleges "a temporary
> delay or interruption in the provision of otherwise
> adequate medical treatment, it is appropriate to focus
> on the challenged delay or interruption in treatment
> rather than the [arrestee]'s underlying medical
> condition alone in analyzing whether the alleged
> deprivation is, in 'objective terms, sufficiently
> serious,' to support a[] [constitutional] claim."
> Smith v. Carpenter, 316 F.3d 178, 185 (2d Cir. 2003)
> (quoting Chance v. Armstrong, 143 F.3d 698, 702 (2d
> Cir. 1998)) (emphases in original).

Bilal v. White, 494 F. App'x 143, 145 (2d Cir. 2012) (summary
order) (first alternation in original).  "Stated differently,
'it's the particular risk of harm faced by the prisoner due to
the challenged deprivation of care, rather than the severity of

the prisoner's underlying medical condition, considered in the abstract, that is relevant for [Section 1983] purposes.'" Goris v. Breslin, 402 F. App'x 582, 585 (2d Cir. 2010) (summary order), quoting Smith v. Carpenter, supra, 316 F.3d at 186.

The subjective prong of a Section 1983 claim for inadequate medical care requires the plaintiff to prove that "the charged official[s acted] with a sufficiently culpable state of mind." Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996).  A plaintiff must show that "the [police officer] was aware of, and consciously disregarded, the [arrestee]'s medical condition." Hernandez v. Goord, 02 Civ. 1704 (DAB), 2006 WL 2109432 at *6 (S.D.N.Y. July 28, 2006) (Batts, D.J.), citing Chance v. Armstrong, supra, 143 F.3d at 703.  "'Deliberate indifference is a mental state equivalent to subjective recklessness . . . . This mental state requires that the charged official act or fail to act while actually aware of a substantial risk that serious harm [to the arrestee] will result.'" Nielsen v. Rabin, supra, 746 F.3d at 63 (first alteration in original), quoting Salahuddin v. Goord, 467 F.3d 263, 280 (2d Cir. 2006); Hemmings v. Gorczyk, 134 F.3d 104, 108 (2d Cir. 1998) (per curiam) (The standard is "equivalent to criminal recklessness, [where] the official knows of and disregards an excessive risk to [the arrestee's] health or safety.") (quotation marks omitted), quoting Farmer v. Brennan,

511 U.S. 825, 837 (1994).  "The reckless official need not desire
to cause such harm or be aware that such harm will surely or
almost certainly result.  Rather, proof of awareness of a sub-
stantial risk of the harm suffices."  Salahuddin v. Goord, supra,
467 F.3d at 280.

A constitutional violation requires "more than ordinary
lack of due care for the [arrestee]'s interests or safety."
Whitley v. Albers, 475 U.S. 312, 319 (1986).  A Section 1983
claim does not lie for conduct that is merely negligent.  County
of Sacramento v. Lewis, 523 U.S. 833, 849 (1998) ("[L]iability
for negligently inflicted harm is categorically beneath the
threshold of constitutional due process."), citing Daniels v.
Williams, 474 U.S. 327, 328 (1986); accord Matican v. City of New
York, 524 F.3d 151, 158 (2d Cir. 2008); Hendricks v. Coughlin,
942 F.2d 109, 113 (2d Cir. 1991); Hudak v. Miller, 28 F. Supp. 2d
827, 831 (S.D.N.Y. 1998) (Sotomayor, then D.J.).  "[A] complaint
that a physician has been negligent in diagnosing or treating a
medical condition does not state a valid claim of medical mis-
treatment under the [Constitution]."  Estelle v. Gamble, supra,
429 U.S. at 106; accord Hill v. Curcione, supra, 657 F.3d at 123.
In addition, "[i]t is well-established that mere disagreement
over the proper treatment does not create a constitutional claim.
So long as the treatment given is adequate, the fact that a

14

prisoner might prefer a different treatment does not give rise to [a constitutional] violation." Chance v. Armstrong, supra, 143 F.3d at 703; accord Thompson v. Racette, 519 F. App'x 32, 34 (2d Cir. 2013) (summary order).

    B.   Analysis of
          Plaintiff's Claim

        Plaintiff claims Officers Mosca, Leung, Symon and Nieves were deliberately indifferent to his ankle injury by delaying his transportation to the hospital and refusing to allow him to use his crutches (Pl.'s 56.1 ¶ 10; Pl.'s Mem. at 10, 14). Defendant argues that plaintiff has failed to raise a question of fact as to whether he suffered from a serious medical need and whether the police officers involved possessed the requisite culpable state of mind (D.'s Mem. at 7, 9). Defendant further argues that plaintiff fails to show that any municipal policy or custom caused the alleged violation of his rights and, therefore, plaintiff cannot proceed against the City (D.'s Mem. at 12).

        1.   Serious
            Medical Need

          a.   Delayed Treatment

        To the extent plaintiff asserts a deliberate indiffer-

15

ence claim based on delayed treatment, he has failed to demon-
strate the existence of a genuine issue of fact as to the exis-
tence of a serious medical need.  Only four and one-half hours
elapsed between plaintiff's arrest and his being seen in Belle-
vue's Emergency Department,[9] and he has failed to demonstrate
that his injury was in any way exacerbated as a result of this
delay.[10]

------

[9]The evidence in the record, construed in the light most
favorable to the plaintiff, demonstrates that plaintiff was
arrested at approximately 1:00 A.M. and was first seen in
Bellevue's Emergency Department at 5:36 A.M. (Nam Decl. Ex. D at
2).  Although plaintiff takes issue with the delay in diagnosis
and treatment after he was brought to Bellevue, there is not a
shred of evidence that any police officers were responsible for
that delay.  See generally Rodriquez v. Mercado, 00 Civ. 8588
(JSR)(FM), 2002 WL 1997885 at *9 (S.D.N.Y. Aug. 28, 2002) (Maas,
M.J.) (Report & Recommendation) ("[G]iven the triage system
utilized by most emergency medical treatment facilities, anyone
seeking care for a non-life-threatening injury generally
experiences some delay in receiving treatment.").  At least in
the absence of evidence that the police officers took active
steps to prolong the delay, the police are not chargeable with
any delay that occurred after plaintiff was brought to Bellevue
because the police do not ordinarily control or have a voice in
deciding the order in which patients are seen.

[10]Defendant argues that the objective prong of a deliberate
indifference claim is not met here because a sprained ankle is
not a serious medical need as a matter of law, citing Farray v.
Green, 12-CV-4717 (ARR)(LB), 2013 WL 5676315 at *13 (E.D.N.Y.
Oct. 16, 2013), Doumin v. Carey, 6:06 Civ. 01119 (NPM)(DEP), 2008
WL 4241075 at *20-*21 (N.D.N.Y. Sept. 12, 2008) and Chatin v.
Artuz, 95 Civ. 7994, 1999 WL 587885 at *3-*4 (S.D.N.Y. Aug. 4,
1999) (Duffy, D.J.), aff'd, 28 F. App'x 9 (2d Cir. 2001) (D.'s
Mem. at 7).  As the authorities cited at pages 12-13 above teach,
where, as here, the deliberate indifference claim is predicated
on a delay in treatment, the relevant question is what
                                              (continued...)

Initially, I note that the evidence plaintiff has
submitted is ambiguous as to whether he sustained a fractured
ankle.  The documentation from plaintiff's visit to Bellevue
Hospital on the day of his arrest states that plaintiff was
diagnosed with a sprained ankle (Pl.'s Mem. Ex. C).  Plaintiff
has also provided several documents from his visit to New York
Presbyterian Hospital on September 25, 2012 (Pl.'s Mem. Ex. C).
While the first page is a form entitled "Ankle Fracture" with
accompanying care instructions, the following page has a section
entitled "Discharge Instructions Given" and states "Ankle Sprain
- 09/25/2012" (Pl.'s Mem. Ex. C).  Plaintiff also testified at
his deposition that a physician at New York Presbyterian diag-
nosed him with a hairline fracture of his ankle (Pl.'s Dep at
93).  Defendant has submitted no evidence clarifying the nature
of plaintiff's injury.  Because I must resolve all ambiguities in
plaintiff's favor, see McClellan v. Smith, supra, 439 F.3d at

---

[10](...continued)
consequence arose or might have arisen from the delay in
treatment and not the nature of the underlying condition.  For
example, a delay in treating a minor cut, which would not, by
itself, constitute a serious medical need, may be actionable if
that delay substantially increases the risk of, or results in, a
serious infection.  Smith v. Carpenter, supra, 316 F.3d at 186.
Thus, the relevant inquiry is not whether plaintiff's ankle
injury satisfied the objective prong of a deliberate indifference
claim but whether the consequences of the four and one-half hour
delay in providing plaintiff with treatment gave rise to a
serious medical need.

17

144, <u>citing</u> <u>Anderson v. Liberty Lobby, Inc.</u>, <u>supra</u>, 477 U.S. at 255, I shall assume that plaintiff sustained a hairline fracture of an unidentified bone in his ankle, which I understand to be the most serious injury suggested by the evidence.

Even assuming that plaintiff suffered a hairline fracture to his ankle, he has provided no evidence that the four and one-half hour delay between his arrest and his being seen at Bellevue resulted in any worsening of his condition or resulted in the exacerbation of his injury. In the absence of such evidence, plaintiff has failed to demonstrate the existence of a genuine issue of fact as to the existence of the objective element of a deliberate indifference claim. Numerous cases involving analogous injuries and delays substantially longer than those involved here have held that a deliberate indifference claim does not lie in the absence of a serious medical need resulting from the delay.

For example in <u>Patterson v. Westchester Cnty.</u>, 13 Civ. 9194 (PAC)(AJP), 2014 WL 1407709 (S.D.N.Y. Apr. 11, 2014) (Peck M.J.) (Report & Recommendation), <u>adopted</u> <u>at</u>, 2014 WL 2759072 (S.D.N.Y. June 16, 2014) (Crotty, D.J.), plaintiff, a sentenced inmate, injured his ankle on December 1, 2012 while playing basketball. His ankle was not X-rayed until December 4, 2012, and he was not diagnosed as suffering from torn ligaments until

December 12, 2012.  He was also not issued crutches until Decem-

ber 12.

       Defendants moved to dismiss plaintiff's deliberate

indifference claim, and the court granted the motion, finding

that neither the objective nor subjective elements of the claim

had been plausibly alleged.  To the extent plaintiff based his

claim on delayed treatment, the court stated:

> Even if his torn ankle ligaments were a serious
> medical need, Patterson was seen promptly when he first
> injured his ankle and every time that he complained
> thereafter, and was treated with an Ace bandage, ice
> packs, Motrin and eventually crutches.  Under these
> circumstances, the alleged delays in Patterson's
> treatment did not create an objectively serious risk of
> harm.  First, the several-day delay in taking and
> reporting the results of an x-ray that revealed torn
> ankle ligaments does not constitute a sufficiently
> serious treatment delay.  See, e.g., Chatin v. Artuz,
> 28 F. App'x at 11 (claim that "officials waited two
> days before taking him to the hospital for x-rays" does
> not "rise[ ] to the level of deliberate indifference to
> [plaintiff's] serious medical needs"); see also, e.g.,
> Scott v. Laux, No. 07-CV-936, 2008 WL 4371778 at *4
> (N.D.N.Y. Sept. 18, 2008) ("'[D]isagreements over . . .
> diagnostic techniques (e.g., the need for X-rays) . . .
> are not adequate grounds for a § 1983 claim.'");
> Williamson v. Goord, No. 02-CV-00521, 2006 WL 1977438
> at *21 (N.D.N.Y. July 11, 2006) ("[E]ven if Plaintiff's
> allegations are true that, between January 2002 and
> March 2002, Defendants . . . delayed in seeing
> Plaintiff, failed to provide an MRI for Plaintiff, and
> failed to refer Plaintiff to an orthopedic specialist
> in connection with injuries to Plaintiff's left knee
> and left ankle, those failures did not threaten to
> produce death or degeneration, or produce extreme pain,
> under the law.").

               *     *     *

Since Patterson's treatment was reasonable, defendants cannot be found liable, see Farmer v. Brennan, 511 U.S. 825, 845, 114 S.Ct. 1970, 1983 (1994); Salahuddin v. Goord, 467 F.3d 263, 279 (2d Cir. 2006), even if Patterson was disappointed by the treatment decisions regarding his crutches and pain medication. See, e.g., Thompson v. Racette, 519 F. App'x 32, 34 (2d Cir. 2013) ("'It is well-established that mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an [constitutional] violation.'"); Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998); Byng v. Wright, 09 Civ. 9924, 2012 WL 967430 at *9 (S.D.N.Y. Mar. 20, 2012); Scott v. Laux, 2008 WL 4371778 at *4; Brown v. Selwin, 250 F. Supp. 2d 299, 308 (S.D.N.Y. 1999), aff'd, 29 F. App'x 762 (2d Cir. 2002) . . . .

Patterson v. Westchester Cnty., supra, 2014 WL 1407709 at *7, *8 (emphasis in original); see also Bilal v. White, supra, 494 F. App'x at 145-46 ("Even assuming that [plaintiff]'s conditions could produce serious complications if neglected over sufficient time, there is no evidence that [plaintiff]'s conditions worsened over the hours of delay here.") (citations omitted); Chatin v. Artuz, 28 F. App'x 9, 10-11 (2d Cir. 2001) (summary order) (two-day delay in X-raying injured ankle failed to satisfy objective element); Poindexter v. Davis, 11 Civ. 2928 (PKC), 2012 WL 5465465 at *5 (S.D.N.Y. Nov. 9, 2012) (Castel, D.J.) (six-hour delay in treating hand fracture did not satisfy objective element); Graham v. Wright, 01 Civ. 9613 (NRB), 2004 WL 1794503 at *5 n.7 (S.D.N.Y. Aug. 10, 2004) (Buchwald, D.J.) (where plaintiff

20

alleged a delay in providing hepatitis medication, court held
that plaintiff must show "harm . . . result[ing] from the delay"
to satisfy objective element of a deliberate indifference claim),
aff'd, 136 F. App'x 418 (2d Cir. 2005); Evans v. Bonner, 196 F.
Supp. 2d 252, 256, 259 (E.D.N.Y. 2002) (granting judgment as a
matter of law to defendants where plaintiff failed to demonstrate
material adverse sequelae from the delayed administration of HIV
medication).

        In addition, plaintiff's unsupported, subjective
complaints of pain are insufficient to give rise to a genuine
issue of fact concerning the objective element.  Bilal v. White,
supra, 494 F. App'x at 146 (Plaintiff's "mere recitation of the
formula that he suffered 'extreme pain' is insufficient to raise
an issue of fact as to whether the delay of the pain medication
was sufficiently serious to rise to the level of [a constitu-
tional] violation.").

        Thus, to the extent that plaintiff asserts a deliberate
indifference claim based on the delay of medical treatment, he
has failed to offer evidence sufficient to give rise to a genuine
issue of fact that he suffered from a serious medical need.

b.  Temporary Deprivation
of Crutches

Plaintiff has also failed to demonstrate the existence
of a genuine issue of material fact to the extent that he alleges
a claim for deliberate indifference based on the police officers
temporarily depriving him of the use of his crutches after he was
released from Bellevue Hospital.

This aspect of plaintiff's claim also fails to satisfy
the objective element of a deliberate indifference claim largely
for the same reason that plaintiff's delay claim fails -- plain-
tiff has not shown any serious medical need resulting from being
temporarily deprived of the use of his crutches.

Plaintiff candidly admits that he was never made to
walk in a manner that would have forced him to put weight on his
injured ankle.  When leaving Bellevue Hospital, the police
officers escorting plaintiff put him on a bed and wheeled him as
close as was possible to the exit.  Thereafter and on all subse-
quent occasions, plaintiff was supported by the police officers
so that he did not have to put weight on his injured ankle.
Given plaintiff's description of the manner in which he was
transported, it appears that having the crutches would have made
no difference -- under either set of circumstances, plaintiff
would not have had to bear weight on his injured ankle.

22

Since plaintiff has not shown any adverse consequence resulting from the temporary deprivation of crutches, this aspect of his claim also fails to meet the objective element of a deliberate indifference claim.

    2.   Culpable
        State of Mind

Even if I assume that plaintiff has demonstrated a genuine issue of fact with respect to the objective element of his deliberate indifference claim, he has failed to demonstrate an issue of fact with respect to the subjective element.

    a.  Delayed Treatment

"Although a delay in providing necessary medical care may in some cases constitute deliberate indifference, [the Second Circuit] has reserved such a classification for cases in which, for example, officials deliberately delayed care as a form of punishment, ignored a 'life-threatening and fast-degenerating' condition for three days, or delayed major surgery for over two years." Demata v. N.Y. State Corr. Dep't of Health Servs., 198 F.3d 233, 1999 WL 753142 at *2 (2d Cir. 1999) (citations omitted)); accord White v. Nassau Cnty. Sheriff Dep't, 14-CV-5203 (JS)(SIL), 2014 WL 5091793 at *3 (E.D.N.Y. Oct. 09, 2014).

In order to survive summary judgment, plaintiff must show, with respect to the subjective element, that there is at least a genuine issue of fact that "the charged official[s] act[ed] or fail[ed] to act while <u>actually</u> <u>aware</u> of substantial risk that serious [arrestee] harm w[ould] result." <u>Salahuddin v. Goord</u>, <u>supra</u>, 467 F.3d at 280 (emphasis added); <u>accord</u> <u>Youmans v. City of New York</u>, 12-CV-4071 (KMK), 2014 WL 1612997 at *6 (S.D.N.Y. Mar. 31, 2014) (Karas, D.J.).

There is nothing in the record here to suggest that the police officers delayed transporting plaintiff to Bellevue with actual knowledge that a four and one-half hour delay would result in a serious risk of harm to plaintiff.  The police officers who had custody of plaintiff were, no doubt, aware that plaintiff had suffered an ankle injury that caused him pain, but there was nothing about plaintiff's condition that suggested more prompt treatment was necessary.  Plaintiff was not bleeding; he was not suffering from a seizure; he did not sustain a compound fracture, nor was he displaying the symptoms of a heart attack or stroke. In short, plaintiff was not displaying any symptoms that would demonstrate to a lay person that immediate medical care was essential in order to prevent serious harm.  The absence of such symptoms is confirmed by the fact that after being seen by the triage nurse at Bellevue, plaintiff still had to wait before

24

being seen by a physician (Pl.'s Dep. at 53-55).[11]  If trained
medical professionals did not conclude plaintiff required immedi-
ate medical care, it is impossible to conclude that plaintiff's
condition could have conveyed to the police officers that he
needed treatment more rapidly than he actually received.

In light of the absence of any indication that more
prompt treatment was necessary and the relatively minor delay
before the officers brought plaintiff to Bellevue, no reasonable
jury could conclude that the police officers delayed providing
plaintiff treatment with the subjective recklessness necessary to
satisfy the subjective element of a deliberate indifference
claim.  See Ricks v. O'Hanlon, 07 Civ. 9849 (WHP), 2010 WL 245550
at *8 (S.D.N.Y. Jan. 19, 2010) (Pauley III, D.J.) ("Even credit-
ing [plaintiff]'s version of the facts, he received medical
treatment [for a laceration and broken wrist] from EMS personnel
and hospital medical staff within two or three hours of his
arrest.  This does not rise to the level of deliberate indiffer-
ence."); Doumin v. Carey, supra, 2008 WL 4241075 at *6 ("While it

---

[11]Plaintiff was seen by a nurse when he arrived at Bellevue,
and she gave him an ice pack for his ankle (Pl.'s Dep. at 53; Nam
Decl. Ex. D at 2).  After that, plaintiff claims he was "there
for hours" and that during that time "[a]side from the [ice]
packet on [his] ankle, nothing else was done to [him]" (Pl.'s
Dep. at 54).  It appears from plaintiff's testimony that he
waited for more than "two hours" before a doctor diagnosed his
injury (see Pl.'s Dep. at 54-55).

is undisputed that Plaintiff was not provided medical care [for
his ankle injury] until two days after he first requested it,
there is no evidence in the record that his condition was 'life
threatening or fast degenerating' nor is there any evidence that
any of the defendants here 'deliberately delayed care as a form
of punishment[.]'"); Basnight v. Rossi, 97 Civ. 1312 (FB), 2003
WL 722810 at *2 (E.D.N.Y. Mar. 4, 2003) (no deliberate indiffer-
ence where arrestee received treatment for laceration requiring
six stitches and allegedly broken nose within four hours of his
arrest); Wandell v. Koenigsmann, 99 Civ. 8652 (WHP), 2000 WL
1036030 at *2, *4 (S.D.N.Y. July 27, 2000) (Pauley, D.J.) (alle-
gations of deliberate indifference insufficient where plaintiff
received medical attention for a broken ankle and fibula from a
nurse within half an hour of his injury and from a physician
within twenty-four hours); Coqueran v. Eagen, 98-CV-7185, 2000 WL
96768 at *4 (E.D.N.Y. Jan. 20, 2000) (two-month delay between
ankle injury and diagnostic X-rays not deliberate indifference);
see also Bilal v. White, supra, 494 F. App'x at 145 ("[T]emporary
delay or interruption in the provision of otherwise adequate
medical treatment for [plaintiff's] ailments lasting only a few
hours" not deliberate indifference even when plaintiff's condi-
tions "arguably are serious").

　　　　Finally, even if I assume that the swelling of plain-

tiff's ankle should have conveyed to the police officers that plaintiff required immediate treatment, plaintiff has still not satisfied the subjective element of the claim.  "[A] defendant's belief that his conduct poses no risk of serious harm (or an insubstantial risk of serious harm) need not be sound so long as it is sincere.  Thus, even if objectively unreasonable, a defendant's mental state may be nonculpable." Salahuddin v. Goord, supra, 467 F.3d at 281.  Plaintiff has offered no evidence that the police deliberately delayed treatment with actual knowledge that more prompt action was necessary.  Thus, even if the police officers' conduct was unreasonable, the subjective element is not satisfied in the absence of evidence that they acted in the face of a serious risk that was actually known to them.

        b.  Temporary Deprivation
           of Crutches

      To the extent plaintiff's claim is based on his being temporarily denied the use of his crutches, he has also failed to offer evidence sufficient to satisfy the subjective element because the officers' actions were a reasonable response to what they perceived to be a relatively minor injury, to wit, a sprained ankle, a perception that was confirmed by the diagnosis from the Emergency Department at Bellevue.  Plaintiff's claim,

therefore, fails as a matter of law.  See Farmer v. Brennan, supra, 511 U.S. at 845 ("[O]fficials who act reasonably cannot be found liable."); Salahuddin v. Goord, supra, 467 F.3d at 280.

Plaintiff argues that the officers "arbitrarily devised an alternative means of transfer that was cruel and unusual and an unnecessary and wanton infliction of pain" (Pl.'s Mem. at 10). As plaintiff notes, this "alternative means of transfer" occurred when the officers denied him use of his crutches to leave Bellevue and instead "rolled [him] to [the] police car via [a] hospital bed" (Pl.'s 56.1 ¶ 24-31).  When the officers were unable to use the bed to bring plaintiff all the way to the car, they helped him hop the remaining distances (see Pl.'s Dep. at 70). There is nothing in plaintiff's description of the officers' conduct that suggests the officers were "cruel" or "wanton." Plaintiff has no claim for deliberate indifference based on interference with prescribed treatment on these facts.

Plaintiff also claims in his opposition brief that he "was forced to endure the cruel and unusual punishing [sic] exercise [i.e., hopping on one foot while handcuffed because he was not permitted to use crutches] that contributed to the further degeneration of plaintiff's injury and intentionally inflict[ed] needless suffering" (Pl.'s Mem. at 10).  This claim of "punishing exercise" and "intentional[] inflict[ion]" of

"suffering" is wholly conclusory and unsupported by any evidence from a competent source.  Nowhere in his complaint or his deposition does plaintiff offer evidence that the police officers intentionally engaged in conduct designed to cause him discomfort or to exacerbate his ankle injury or that any "further degeneration" actually occurred.  Plaintiff makes no allegation that he was forced to stand or walk on his injured foot.

To the contrary, plaintiff admits that the police officers aided him at every turn:  on leaving Bellevue, they wheeled him out on a hospital bed; they helped him into the police car waiting outside; they helped him hop the short distance to the entrance at Central Booking; and they uncuffed him and permitted him to use the crutches once inside Central Booking (Pl.'s Dep. at 69-71).  When plaintiff was not admitted to Central Booking, the officers again helped him hop back to the patrol car; they helped him to the entrance of the Precinct; and they allowed plaintiff to remain seated while he waited to return to Central Booking (Pl.'s Dep. at 75, 79).  There is nothing in this conduct that remotely suggests the officers were indifferent to plaintiff's injury.  Thus, plaintiff has not raised a question of fact that the police officers "consciously disregarded[] [plaintiff's] medical condition," Hernandez v. Goord, supra, 2006 WL 2109432 at *6, citing Chance v. Armstrong, supra, 143 F.3d at

703, or acted "reckless[ly]" in the face of plaintiff's diagno-
sis, see Caiozzo v. Koreman, supra, 581 F.3d at 69, citing Farmer
v. Brennan, supra, 511 U.S. at 836.

      Accordingly, I respectfully recommend that defendant's
motion for summary judgment be granted.

      3.   The City

      Because plaintiff has failed to raise a genuine ques-
tion of fact as to whether a constitutional violation occurred, I
need not reach the issue of whether there was a constitutional
violation pursuant to a custom or policy sufficient to give rise
to municipal liability.  See generally Monell v. Dep't of Social
Servs., 436 U.S. 658 (1978).

      4.   Leave to Amend

      Plaintiff requests leave to amend to add Officers
Mosca, Leung, Symon and Nieves as individual defendants (Pl.'s
Mem. at 14).  Because such amendment would be futile for the
foregoing reasons, I further recommend that leave to amend be
denied.  See Foman v. Davis, 371 U.S. 178, 182 (1962); Nielsen v.
Rabin, supra, 746 F.3d at 62; Ellis v. Chao, 336 F.3d 114, 127
(2d Cir. 2003) ("[I]t is well established that leave to amend a
complaint need not be granted when amendment would be futile.").

IV.   <u>Conclusion</u>

        Accordingly, for all the foregoing reasons, I respect-
fully recommend that defendant's motion for summary judgment be
granted in all respects.

V.   <u>Objections</u>

        Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of
the Federal Rules of Civil Procedure, the parties shall have
fourteen (14) days from receipt of this Report to file written
objections.   <u>See also</u> Fed.R.Civ.P. 6(a).   Such objections (and
responses thereto) shall be filed with the Clerk of the Court,
with courtesy copies delivered to the Chambers of the Honorable
Lewis A. Kaplan, United States District Judge, 500 Pearl Street,
Room 2240, and to the Chambers of the undersigned, 500 Pearl
Street, Room 750, New York, New York 10007.   Any requests for an
extension of time for filing objections must be directed to Judge
Kaplan.   FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS **WILL** RESULT
IN A WAIVER OF OBJECTIONS AND **WILL** PRECLUDE APPELLATE REVIEW.
<u>Thomas v. Arn</u>, 474 U.S. 140, 155 (1985); <u>United States v. Male
Juvenile</u>, 121 F.3d 34, 38 (2d Cir. 1997); <u>IUE AFL-CIO Pension
Fund v. Herrmann</u>, 9 F.3d 1049, 1054 (2d Cir. 1993); <u>Frank v.
Johnson</u>, 968 F.2d 298, 300 (2d Cir. 1992); <u>Wesolek v. Canadair</u>

31

Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714

F.2d 234, 237-38 (2d Cir. 1983) (per curiam).

Dated:   New York, New York
         October 21, 2014

Respectfully submitted,

HENRY PITMAN
United States Magistrate Judge

Copies mailed to:

Mr. Vincent C. Johnson
7 Young Street
Apt. 1
Staten Island, New York 10304

Rosemari Y. Nam, Esq.
Lisa M. Richardson, Esq.
Max O. McCann, Esq.
New York City Law Department
Office of the Corporation Counsel
100 Church Street
New York, New York 10007